Francis William STRINGER,
Appellant,

v.

The STATE of Texas.

No. PD–757–06.

Court of Criminal Appeals of Texas.

Nov. 7, 2007.

Rehearing Denied Dec. 19, 2007.

David A. Pearson, Fort Worth, for Appellant.

Matthew Paul, State's Attorney, Austin, Debra Ann Windsor, Asst. D.A., Fort Worth, for State.

## OPINION

KEASLER, J., delivered the opinion for a unanimous Court.

The trial judge overruled Francis William Stringer's Confrontation Clause objection to the admission of information about an extraneous, unadjudicated offense contained in the presentence investigation report. Stringer appealed, and the court of appeals held that Stringer's written waiver of his right to confront and cross-examine witnesses pursuant to Article 1.15, Texas Code of Criminal Procedure, which was made at the time of his guilty plea, applied to the punishment stage.[1] We disagree, reverse its judgment, and remand the case for further consideration.

---

1. *Stringer v. State,* 196 S.W.3d 249, 251–52 (Tex.App.-Fort Worth 2006).

## Procedural History

Stringer was charged with possession of child pornography, a third-degree felony offense. Without a plea-bargain agreement with the State, Stringer entered a guilty plea before the trial judge. In entering his plea, Stringer signed written admonishments, which stated, among other things:

> (9) Joined by my attorney and in accordance with Art. 1.13 and 1.15 of the Code of Criminal Procedure, I waive and give up my right to a jury, both as to my guilt and assessment of my punishment. Under Art. 1.15, Code of Criminal Procedure, I waive and give up the right to appearance, confrontation, and cross-examination of the witnesses, and I consent to oral and written stipulations of evidence[.]

Stringer did not waive the preparation of a presentence investigation report (PSI). The trial judge accepted Stringer's guilty plea, but deferred any finding on Stringer's guilt until the PSI was prepared.

During the hearing held after the PSI was completed, the State asked the trial judge to take judicial notice of the PSI. Stringer objected to the admission of the information contained in the "Adult Felony History" section of the report. This section of the report contained detailed information about a pending charge for possession of child pornography in Dallas. Citing the United States Supreme Court's decision in *Crawford v. Washington*,[2] Stringer claimed that admitting the evidence would violate his Sixth Amendment right to confront and cross-examine witnesses during the punishment phase of his trial. The State claimed that the trial judge had a duty to inquire into the offense and stated that the witnesses interviewed for the "Adult Felony History" section of the report would be available for cross-examination. The trial judge overruled Stringer's objection but allowed Stringer to have a running objection.

After hearing arguments from the State and Stringer on punishment, the trial judge found Stringer guilty and sentenced him to nine years' imprisonment.

Having preserved his right to appeal, Stringer appealed the trial judge's decision to admit the "Adult Felony History" section of the PSI report.[3] The Fort Worth Court of Appeals, with Justice Dauphinot dissenting, held that "Stringer knowingly, voluntarily, and intelligently waived his Sixth Amendment right to confront and cross-examine witnesses at the sentencing hearing."[4] The court reasoned that the admonishments signed by Stringer when he entered his guilty plea stated that he waived his right to confront and cross-examine witnesses.[5]

In dissent, Justice Dauphinot concluded that Stringer's waiver of his right to confrontation and cross-examination applied only to the guilt phase.[6] Justice Dauphinot relied on our decision in *Carroll v. State (Carroll V )*,[7] which in turn relied on the United States Supreme Court's opinion in *Mitchell v. United States*.[8] In *Mitchell,* the Supreme Court held that a waiver of the privilege against self-incrimination pursuant to a guilty plea does not waive

---

2. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

3. *Stringer,* 196 S.W.3d at 250.

4. *Id.* at 252.

5. *Id.*

6. *Id.* at 252–55 (Dauphinot, J., dissenting).

7. 42 S.W.3d 129 (Tex.Crim.App.2001).

8. 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

the privilege at sentencing.[9] The Court reasoned that, although the petitioner was admonished by the district judge as required by Federal Rule of Criminal Procedure 11 that she was waiving her Fifth Amendment right against compelled self-incrimination by pleading guilty and waiving her right to a trial, "the warning would not have brought home to petitioner that she was also waiving the right to self-incrimination at sentencing."[10] "A waiver of a right to trial with its attendant privileges is not a waiver of the privileges which exist beyond the confines of the trial."[11] The Court went on to assert that adjudication of guilt does not eliminate the potential for compelled self-incrimination by the defendant.[12] "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony."[13] Finally, the Court stated that its holding applies whether or not the punishment hearing is separate from the guilt hearing.[14]

We applied *Mitchell's* holding in *Carroll V.* In that case, the appellant pled guilty and waived her right to self-incrimination.[15] At the sentencing hearing, the trial judge warned the appellant that if she invoked her Fifth Amendment privilege, it would be considered as a circumstance against her in assessing punishment.[16] We held that the appellant's waiver of her right against self-incrimination, pursuant to a non-negotiated guilty plea, did not apply to sentencing.[17] In reaching this conclusion, we considered the text of the waiver and observed that the appellant was not specifically warned that she would be waiving her right to silence at sentencing.[18]

After a thorough discussion of our reliance on *Mitchell* in *Carroll V,* Justice Dauphinot stated:

> The right of confrontation and cross-examination is a significant constitutional right, just like the right to remain silent. As in *Carroll,* the issue of guilt of the primary offense was uncontested. And, as in *Carroll,* when the sentence has not yet been imposed, a defendant may have a legitimate fear of adverse consequences at punishment from hearsay evidence regarding extraneous acts of misconduct.[19]

Justice Dauphinot also concluded that Stringer properly contested the "Adult Felony History" portion of the report and did not waive an objection "merely because he requested a PSI."[20] She observed that, under the Texas Code of Criminal Procedure, a defendant may comment on a PSI and, with the permission of the trial judge, a defendant "may also contest portions of the PSI by offering evidence of factual inaccuracies in the investigation or report."[21] She further noted that the

9. *Id.* at 325, 119 S.Ct. 1307.

10. *Id.* at 323–24, 119 S.Ct. 1307.

11. *Id.* at 324, 119 S.Ct. 1307.

12. *Id.* at 325, 119 S.Ct. 1307 (quoting *Estelle v. Smith,* 451 U.S. 454, 462, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981)).

13. *Id.* at 326, 119 S.Ct. 1307.

14. *Id.* at 327, 119 S.Ct. 1307.

15. *Carroll V,* 42 S.W.3d at 130.

16. *Id.* at 131.

17. *Id.* at 132.

18. *Id.* at 132–33.

19. *Stringer,* 196 S.W.3d at 254–55 (Dauphinot, J., dissenting).

20. *Id.* at 255–56 (Dauphinot, J., dissenting).

21. *Id.* at 255 (Dauphinot, J., dissenting) (citing Tex.Code Crim. Proc. Ann. art. 42.12, § 9 (Vernon Supp.2005)).

State should not be relieved of its burden to prove extraneous-offense evidence beyond a reasonable doubt at punishment just "because the trial judge assesses punishment."[22]

We granted Stringer's petition for discretionary review to determine whether the lower court "erred in deciding that when [Stringer] waived his confrontation and cross-examination right in this guilty plea pursuant to Code of Criminal Procedure [Article] 1.15, he also waived it for purposes of the sentencing hearing[.]" We hold that the court of appeals erred and remand for proceedings consistent with this opinion.

## Analysis

 "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'"[23] The Confrontation Clause prohibits the admission of testimonial statements unless the declarant is not available to testify and the accused had a prior opportunity for cross-examination.[24] The right to confront and cross-examine witnesses may be waived.[25] However, the United States Supreme

Court has made clear that we must "indulge every reasonable presumption against waiver of fundamental constitutional rights...."[26] A waiver of the right to confront and cross-examine witnesses will not be presumed from a silent record.[27] Therefore, "for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'"[28] When determining "whether there has been an intelligent waiver"[29] of the right to confront and cross-examine witnesses, we examine the specific facts and circumstances surrounding the waiver, "including the background, experience, and conduct of the accused."[30]

 Before us, Stringer argues, "The Court of Appeals wrongly determined that the Confrontation Clause waiver in this case, pursuant to Texas Code of Criminal Procedure Article 1.15, and for purposes of entering a guilty plea, was also a waiver of the right for punishment." He contends that the court misconstrued the written waiver because Article 1.15 does not apply to the punishment phase. Stringer therefore claims that the court of appeals's decision conflicts with the Supreme Court's

22. *Id.*

23. *Crawford*, 541 U.S. at 42, 124 S.Ct. 1354; *see also Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (holding that "the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.").

24. *Crawford*, 541 U.S. at 68–69, 124 S.Ct. 1354.

25. *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

26. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *overruled in part on other grounds by Edwards v. Arizona,*

451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Brookhart*, 384 U.S. at 4, 86 S.Ct. 1245.

27. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

28. *Brookhart*, 384 U.S. at 4, 86 S.Ct. 1245 (quoting *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019).

29. *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019.

30. *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019; *see also Brookhart*, 384 U.S. at 4, 86 S.Ct. 1245 (stating, "In deciding the federal question of waiver raised here we must look, of course, to the facts which allegedly support the waiver.").

opinion in *Mitchell* and our opinion in *Carroll V.*

The State contends that Stringer's written waiver applied to guilt and punishment. The State asserts, "The waiver's placement in the same paragraph immediately following and without contradiction of a waiver explicitly mentioning the guilt and the punishment phases indicated that it is applicable to both phases[.]" The State further argues, "Had the waiver of confrontation rights in the second sentence been applicable to only the guilt stage of the proceedings, it would have been contained in a new numbered paragraph or it would have expressly stated that it applied only to the guilt phase."

Offering two alternative waiver arguments, the State first contends that Stringer failed to make a timely objection to the PSI report. According to the State, Stringer could have objected when he entered his guilty plea and the trial judge ordered the report because he was put on notice that the report would include information about the unadjudicated Dallas offense as part of his criminal history.[31] Next, the State contends that Stringer waived any objection by objecting only to a *portion of the report*. The State asserts that "there is no confrontation distinction between different portions of the report" and therefore Stringer "should have objected to the entire report or not at all."

In line with the reasoning and holding of both *Mitchell* and *Carroll v.* with respect to the Fifth Amendment right to self-incrimination, the court of appeals recognized the distinction between the waiver of the right to confront and cross-examine at the guilt stage and the waiver of that right at the punishment stage.[32] And in deciding whether Stringer waived his right to confront and cross-examine witnesses at punishment, the court relied solely on the text of the written waiver; it did not find that Stringer waived his right to confrontation and cross-examination at punishment by virtue of his guilty plea or that the waiver of that right, entered at the time of his guilty plea, automatically applied to punishment.[33] Thus, in this case, whether the court of appeals correctly determined that Stringer waived his right to confront and cross-examine witnesses at the punishment stage is controlled by the text of the written waiver.[34]

The written waiver stated: "Under Art. 1.15, Code of Criminal Procedure, I waive and give up the right to appearance, confrontation, and cross-examination of the witnesses . . . [.]" Although the State places great significance on the fact that this waiver followed, in the same paragraph, Stringer's waiver of his right to a jury trial at guilt and punishment, we find its arguments unpersuasive. The waiver of the right to confront and cross-examine does not refer to punishment even though, as shown by the waiver of the right to a jury, applicable to both guilt and punishment, such express language could have easily been incorporated into the waiver. In the absence of any explicit reference to punishment and, in light of the waiver's direct reference to Article 1.15, we decline

31. *See* Tex.Code Crim. Proc. Ann. art. 42.12 § 9.

32. *Stringer,* 196 S.W.3d at 250–52.

33. *Compare Stringer,* 196 S.W.3d at 250–52, *with Carroll V,* 42 S.W.3d at 131 (observing that in *Carroll II,* we incorrectly held that the appellant's guilty plea extended to the issue of punishment because, when the appellant entered her guilty plea, "the proceeding became 'unitary' to determine the issue of punishment[.]'").

34. *See Carroll V,* 42 S.W.3d at 132 (reviewing written waivers); *see also Mitchell,* 526 U.S. at 325, 119 S.Ct. 1307 (reviewing transcript from plea colloquy).

to accept the State's invitation to infer that the waiver applied to punishment.[35]

We conclude that the introductory reference to Article 1.15 defines the scope of the written waiver and, in doing so, it limits the application of the waiver to the guilt stage.

Article 1.15, titled "Jury in felony," states:

No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same. The evidence may be stipulated if the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause.[36]

To determine the "collective legislative intent or purpose" behind Article 1.15, we analyze the statutory text "and attempt to discern the fair, objective meaning of that text at the time of its enactment." [37] We will give effect to the plain meaning of Article 1.15 "if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it[.]" [38] We will not give effect to the plain meaning, however, where the text is ambiguous or the application of the plain meaning "would lead to absurd consequences that the Legislature could not have *possibly* intended[.]" [39] In such cases, we will consider extratextual sources to develop a reasonable interpretation.[40]

According to its terms, Article 1.15 applies only where a felony-defendant waives the right to a trial by jury at the guilt stage. Article 1.15 clearly speaks of the introduction of evidence showing the defendant's guilt and evidence sufficient to support a defendant's conviction where a defendant waived the right to a jury trial at the guilt stage.[41] Article 1.15 contains no reference to punishment.[42] Indeed, as former Presiding Judge Onion observed, Article 1.15 concerns the State's burden to produce sufficient evidence to support a guilty verdict when a defendant waives the right to a jury trial.[43] And when a defen-

35. *Cf. Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

36. Tex.Code Crim. Proc. Ann. art. 1.15 (Vernon 2005) (last amended by Acts 1991, 72nd Leg., ch. 652, § 3, eff. Sept. 1, 1991).

37. *Boykin,* 818 S.W.2d at 785.

38. *Id.*

39. *Id.* (emphasis in original).

40. *Id.*

41. *See Rodriguez v. State,* 442 S.W.2d 376, 385 (Tex.Crim.App.1968) (op. on reh'g).

42. *Boykin,* 818 S.W.2d at 785.

43. Tex.Code Crim. Proc. Ann. art. 1.15 (Vernon 1977) (Hon. John F. Onion, Jr., Special Commentary); *Bowie v. State,* 135 S.W.3d 55, 62 (Tex.Crim.App.2004); *Edwards v. State,* 463 S.W.2d 733, 733–34 (Tex.Crim.App.1971).

dant waives a jury at the guilt stage, the requirement of a written waiver of the right to confrontation and cross-examination is applicable only when a defendant consents to stipulate to evidence for the trial judge's consideration in rendering a verdict on guilt.[44]

Our understanding of Article 1.15 is consistent with our determination in *Holtzclaw v. State*.[45] In that case, the appellant, who elected to have the trial judge assess punishment after the jury found him guilty of robbery, entered a plea of true to the enhancement and stipulated to the enhancement during the punishment hearing.[46] On appeal, the appellant claimed that the evidence was insufficient to support a prior conviction alleged for purposes of enhancement at punishment.[47] We disagreed and held that Article 1.15 "has no application in jury cases whether punishment is assessed by the court or by a jury."[48] In recognizing that Article 1.15 does not apply when a judge assesses punishment after a jury enters a guilty verdict, we necessarily concluded Article 1.15 does not apply at the punishment stage.

▇▇▇ Because Article 1.15 applies only to the guilt stage, we hold that Stringer's written waiver of his right to confrontation and cross-examination applied only to the guilt stage. Therefore, contrary to the determination of the court of appeals, Stringer did not knowingly, voluntarily, and intelligently waive his right to con-

front and cross-examine witnesses at sentencing.

▇▇▇ Finally, as noted above, the court of appeals did not address the State's alternative waiver arguments in deciding that Stringer waived his right to confrontation and cross-examination at sentencing. "In our discretionary review capacity we review 'decisions' of the courts of appeals."[49] Thus, the State's alternative arguments are not ripe for our review.[50] Because we reverse the judgment of the court of appeals, the court shall consider these arguments on remand.[51]

## Conclusion

We conclude that the court of appeals erred in holding that Stringer's written waiver of his right to confront and cross-examine witnesses pursuant to Article 1.15 applied to the punishment stage. Therefore, the judgment of the court of appeals is reversed and this case is remanded to the court of appeals. On remand, the court of appeals shall first address the State's alternative arguments. In the event that the court rejects the State's alternative arguments, the court shall determine whether the information contained in the "Adult Felony History" section of the report is "testimonial" under *Crawford*. If the court determines that the information is "testimonial," then the court shall consider whether Stringer was

**44.** *See Matthews v. State*, 414 S.W.2d 938, 939–40 (Tex.Crim.App.1967).

**45.** 451 S.W.2d 505 (Tex.Crim.App.1970).

**46.** *Id.* at 506–07.

**47.** *Id.* at 507.

**48.** *Id.; see also Williams v. State*, 641 S.W.2d 925, 927 (Tex.Crim.App.1982).

**49.** *Lee v. State*, 791 S.W.2d 141, 142 (Tex. Crim.App.1990) (citing Tex. Const. Art. V, § 5; Tex.Code Crim. Proc. Ann. art. 44.45; Tex.R.App. P. 200(a) (current version at Tex.R.App. P. 66.3)).

**50.** *Id.*

**51.** *See Jones v. State*, 942 S.W.2d 1, 2 n. 1 (Tex.Crim.App.1997).

harmed.[52]

**52.** *Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005); Tex.R.App. P. 44.2(a).